IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |  |
|---|---|---|
| DEJESUS COLLINS, #366-774, #1746-140, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JKB-19-2526 |
| WARDEN ALLEN GANG and OLUWASEUN OGUNDUYILE, | * | |
| | * | |
| Defendants | | |

\*\*\*

## MEMORANDUM OPINION

Self-represented plaintiff DeJesus Collins, an inmate presently incarcerated at North Branch Correctional Institution in Cumberland, Maryland, filed the above-captioned 42 U.S.C. § 1983 civil rights action against Jessup Correctional Institution ("JCI") Warden Allen Gang and correctional officer Oluwaseun Ogunduyile.[1] ECF No. 1. In the complaint, Collins alleges that while he was incarcerated at JCI, he was assaulted by Ogunduyile and was not taken to the hospital for treatment. *Id.* at 2-3.

On August 7, 2020, defendants filed a motion to dismiss or, in the alternative, motion for summary judgment. ECF No. 11. The court informed Collins, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that the failure to file a response in opposition to the motion could result in dismissal of the complaint. ECF No. 12. Collins filed nothing further.

This court deems a hearing unnecessary. *See* Local Rule 105.6 (D.Md. 2016). For the reasons set forth below, defendants' motion, construed as one for summary judgment, shall be granted.

---

[1] The Clerk shall be directed to correct defendants' names on the docket.

## Background

Collins claims that at approximately 5:13 p.m. on December 28, 2018, Ogunduyile grabbed his arm and threw him out of his wheelchair onto the floor, causing him to hurt his back and legs. Complaint, ECF No. 1 at 2. Collins asserts that in so doing, Ogunduyile violated the institutional procedure prohibiting correctional officers from making physical contact with wheelchair-bound inmates without the inmate's consent. *Id.* at 2-3. Collins also claims that he was not taken to the hospital for medical treatment. *Id.* He seeks $250,000 in damages. *Id.* at 4.

In response, defendants filed a motion supported by several exhibits indicating that at approximately 4:50 p.m. on December 28, 2018, Ogunduyile observed Collins attempting to step off the wing to retrieve another dinner tray from the Meals on Wheels worker at JCI. *See* Notice of Inmate Rule Violation, ECF No. 11-3 at 2. Ogunduyile told Collins that he already received his tray for dinner and, therefore, Collins could not step off the wing. *Id.* At that time, the dietary officer who was escorting the Meals on Wheels worker stated that she would give Collins another tray. *Id.* As such, Ogunduyile called for the grill to be opened and the dietary worker handed Collins another tray. *Id.*

After receiving the tray, Collins attempted to step off the wing again, and Ogunduyile gave him a verbal command to stop. Affidavit of Ogunduyile, ECF No. 11-2 at ¶5. Ogunduyile turned around to direct an officer to secure the grill and, while his back was turned, Collins pushed his wheelchair towards Ogunduyile, striking him from behind on both legs. *Id.*; ECF No. 11-3 at 2. Ogunduyile turned to stop Collins from further hitting him with his wheelchair; however, Collins aggressively charged towards Ogunduyile and attempted to stand up from the wheelchair. *Id.* Ogunduyile pushed Collins's wheelchair to prevent Collins from further striking him, and Collins then stood up, fell out of his chair, and landed on the floor. *Id.*

2

Collins was escorted to the medical unit, where he was uncooperative with the medical staff and refused to be evaluated for any injuries. Medical Record, ECF No. 11-4. The medical staff cleared Collins to return to his housing unit and he wheeled himself out of the dispensary. *Id.* Collins refused to provide a statement. Inmate Statement Form, ECF No. 11-5. On December 30, 2018, Collins received a notice of infraction regarding the incident. ECF No. 11-3.

## Standard of Review

Defendants have moved to dismiss the claims under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. Motions styled in this manner implicate the Court's discretion under Rule 12(d), which provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2000), *aff'd*, 684 F.3d 462 (4th Cir. 2012). The court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, Civ. No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). A "[r]easonable opportunity" for the nonmoving party means that the nonmoving party must be aware that the court may treat the motion as one for summary judgment and the nonmoving party must "be afforded a reasonable opportunity for discovery" if

3

necessary to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (internal quotation marks and citation omitted). To do so, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why, "for specified reasons, it cannot present facts essential to justify its opposition" without formal discovery, or otherwise put the district court on notice of the reasons why summary judgment is premature. Fed. R. Civ. P. 56(d). *See also Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002).

The court shall treat defendants' motion as one for summary judgment. Collins knew from the motion itself that defendants are pursuing summary judgment. Moreover, Collins has not sought additional discovery under Rule 56(d), nor has he explained why he cannot present facts essential to justify his opposition without formal discovery. Construing the motion as seeking summary judgment is therefore appropriate.

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The nonmoving party bears the burden of showing the existence of a genuinely disputed material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 586–87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Moreover, a dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–50.

The court reads Collins's pleadings generously, as he proceeds *pro se*. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That said, the court must also fulfill its "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks and citation omitted).

## Discussion

In their motion, defendants argue, *inter alia*, that (1) Ogunduyile is entitled to summary judgment because there was no evidence that he used excessive force; (2) Collins fails to allege any personal involvement on the part of Warden Gang; and (3) defendants are protected by qualified immunity. ECF No. 11-1.

### I.   Officer Ogunduyile

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const. amend. VIII; *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). To establish an Eighth Amendment violation, an inmate must establish both that the prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

The subjective element requires evidence that prison personnel used force "maliciously or sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain

or restore discipline." *Hudson*, 503 U.S. at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)) (internal quotation marks omitted). In evaluating this element, a court should consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 321) (internal quotation marks omitted).

To satisfy the objective level of harm, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 37 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)) (internal quotation marks omitted).

Viewing the facts in the light most favorable to Collins, it appears that he fell to the ground after he struck Ogunduyile with his wheelchair and attempted to stand up. Collins had been given a second tray of food, but he attempted to leave the wing, and Ogunduyile instructed him to stop. When Ogunduyile turned around to direct another officer to secure the grill, Collins struck Ogunduyile's legs with his wheelchair. Upon seeing that Collins would strike him again, Ogunduyile pushed the wheelchair just as Collins was attempting to stand, causing Collins to fall to the floor. Collins was then taken to the medical unit, where he refused to be evaluated.

On this record, it does not appear that Ogunduyile used force maliciously or sadistically. Rather, any force used by Ogunduyile in pushing Collins's wheelchair was applied to quell a reasonably perceived threat that Collins would strike him again. Thus, Ogunduyile acted appropriately in a good faith effort to restore discipline. Because Collins does not meet his burden

of identifying evidence to show that a genuine dispute of material facts exists regarding his claim of cruel and unusual punishment, Ogunduyile is entitled to summary judgment.

## II. Warden Gang

Other than naming Warden Gang in the caption of the complaint, Collins does not identify any specific action or inaction on his part that resulted in a constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (stating that liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation). To the extent Collins intended to sue Warden Gang in his capacity as Ogunduyile's supervisor, he cannot succeed.

It is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no *respondeat superior* liability under § 1983). Rather, liability of supervisory officials is "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). To establish supervisory liability under § 1983, a plaintiff must show "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*,

7

717 F.2d 932, 936 (4th Cir. 1983).

Collins has failed to plead or demonstrate sufficient facts showing supervisory indifference to, or tacit authorization of, any misconduct by Warden Gang's subordinates. As discussed above, Collins failed to show that his Eighth Amendment rights were violated. Accordingly, he has necessarily failed to demonstrate that Warden Gang authorized or was indifferent to any such violation. Collins's assertions do not demonstrate any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability. *See id.* ("Generally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse."). Therefore, Warden Gang is entitled to summary judgment.[2]

## Conclusion

Defendants' motion, construed as one for summary judgment, is granted. A separate order follows.

Dated this 15 day of December, 2020.

FOR THE COURT:

_____
James K. Bredar
Chief Judge

---

[2] In light of this ruling, the court need not address defendants' arguments regarding qualified immunity.